```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA,              :
                                       :
                                       :
         -against-                     :         MEMORANDUM & ORDER
                                       :           16-cr-131 (DLI)
RAFAEL ANTONIO FABIAN,                 :
                                       :
                                       :
                        Defendant.     :
-------------------------------------------------------x
```

**DORA L. IRIZARRY, Chief United States District Judge:**

Defendant Rafael Antonio Fabian ("Defendant") is charged by indictment returned by a grand jury of this district with conspiracy to distribute and to possess with the intent to distribute heroin, cocaine, and cocaine base, also known as crack, in violation of 21 U.S.C. §§ 841 and 846. Superseding Indictment, Dkt. Entry No. 62. Defendant moved to suppress evidence seized from a white Audi Q5 sport utility vehicle (the "White Audi") and a Jeep Grand Cherokee (the "Jeep"). The Court held a suppression hearing on February 27, 2019. *See*, Dkt. Entry No. 139. For the reasons set forth below, Defendant's motion is denied in its entirety.

## I. Findings of Credibility

At the suppression hearing, the Government presented the testimony of Monmouth County Detective Melissa Ocasio ("Det. Ocasio"). From September 2012 until July 2017, Det. Ocasio was a Drug Enforcement Administration ("DEA") Special Agent. During her time as a DEA Special Agent, Det. Ocasio was assigned to Task Forces 23 and 43. The Court finds the testimony of Det. Ocasio credible.

Defendant did not testify at the suppression hearing, but did submit an affidavit on his behalf, as well as the affidavits of Laura Perez and Nelson Fabian, in connection with Defendant's

expectation of privacy in both vehicles. The Court credits the affidavits to the extent that they establish Defendant's expectation of privacy in the vehicles seized and the contents therein.

## II. Findings of Fact

Defendant's arrest stems from a long-term investigation by the DEA and the New York City Police Department (the "DEA Task Force or DEATF") into cocaine and heroin distribution in Brooklyn, New York. Det. Ocasio was one of the lead investigators assigned to the investigation. In October 2015, Det. Ocasio arrested Jose Nunez, an alleged co-conspirator of Defendant, after his attempted sale of crack cocaine to a confidential informant in Brooklyn, New York. Tr. 34:11-17.[1] Nunez subsequently pled guilty pursuant to a cooperation agreement. *Id.* Based in part on Nunez's information, the DEA Task Force then arrested Carlos Suriel, one of the original codefendants in this case, for drug trafficking. *Id.* at 39:19-23.

Over the course of several days, Suriel admitted and described his role in a drug trafficking conspiracy with Defendant, Nunez, and others to DEATF agents. *Id.* at 42:8-43:3. Suriel explained to Det. Ocasio that, during the conspiracy, he received drugs from an individual known as "Rafaelito," and described how they conducted their transactions. *Id.* at 42:8-12. Suriel reported that "Rafaelito" drove a blue Audi with a secret "trap" compartment (the "Blue Audi"). *Id.* at 43:8-10. Suriel also advised that "Rafaelito" recently had received a speeding ticket while driving the Blue Audi. *Id.* at 43:8-10. Additionally, Suriel told the agents that "Rafaelito" used another car, describing it as similar to a vehicle he had observed through a window of the DEA's office, to wit, a white SUV. *Id.* at 49:12-16. Det. Ocasio testified that the vehicle Suriel recognized was a white Audi Q5 SUV. *Id.* at 49:12-16, 67:2-68:8. Det. Ocasio was able to verify that the speeding ticket described by Suriel was a ticket issued to "Rafael A. Fabian" while he was driving

---

[1] "Tr." refers to the transcript of the suppression hearing held on February 27, 2019.

a 2008 blue Audi.  *Id.* at 43:1-44:17; GX-10.[2]  Det. Ocasio also searched for Defendant's name and the names of potential relatives, and identified Defendant's brother, Nelson Fabian, as the registered owner of a white Audi Q5 SUV.  *Id.* at 49:23-50:3.

On March 18, 2016, a grand jury in the Eastern District of New York returned an indictment that, *inter alia*, charged Defendant, and others with conspiracy to possess and to possess with the intent to distribute heroin, cocaine and cocaine base.  Indictment, Dkt. Entry No. 1.[3]  That day, the Honorable Marilyn D. Go, United States Magistrate Judge, issued an arrest warrant for Defendant along with a search warrant for the Blue Audi.  Tr. 48:2-3.  Upon obtaining the warrants, members of the DEA Task Force searched for the Blue Audi at "several locations" they believed Defendant may have frequented, but did not find it.  Tr. 48:6-16; *See*, Arrest Warrant, Dkt. Entry No. 15.

On March 28, 2016, Det. Ocasio along with other members of the DEATF located and arrested Defendant.  That day, while surveilling the area near Bruckner Boulevard and Pugsley Avenue in the Bronx, New York, Det. Ocasio saw Defendant driving a vehicle matching the description of the White Audi.  *Id.* at 10:21-11:6, 15:15-16:10.  Det. Ocasio watched Defendant double park the White Audi next to a Jeep.  *Id.* at 16:21-23, 79:3-80:9.  The Jeep lacked "hard" license plates and was parked on the street.  *Id.*  Det. Ocasio and the other DEATF members approached Defendant, and asked him to turn off and exit the White Audi.  *Id.* at 18:14-19:12.  Det. Ocasio asked Defendant if the White Audi was stolen.  *Id.* at 19:17-20:3.  Defendant exited the vehicle and told the agents that the White Audi belonged to his brother, Nelson.  *Id.* at 19:17-21.

Defendant was handcuffed, given his *Miranda* warnings, and moved to the backseat of a

---

[2] "Gx" refers to Government Exhibits referenced at the hearing.
[3] On April 28, 2017, the Government filed a superseding indictment that included additional charges against codefendant Suriel.  *See*, Superseding Indictment, Dkt. Entry No. 62.

police vehicle. *Id.* at 21:1-15. While in the police vehicle, Defendant spontaneously told Det. Ocasio that he had learned from a friend that the Jeep's license plates had been stolen and, fearing it would be towed, needed to put new license plates on the vehicle. *Id.* at 21:19-23, 22:5-16, 23:4-6. When asked if he owned the Jeep, Defendant responded variously that it was his, but "really wasn't" his; he had purchased it in cash and had done a favor for a friend by registering the Jeep under his friend's name. *Id.* at 22:20-24. The agents asked if Defendant had the keys to the Jeep and Defendant first responded by asking to call his girlfriend. *Id.* at 23:11-17. When asked again, he hesitated initially, but then admitted they were in a black satchel inside the White Audi. *Id.* at 23:11-17. Defendant gave the agents permission to retrieve the Jeep's keys from that satchel. *Id.* at 23:16-17.

The members of the DEA Task Force then transported Defendant, the White Audi and the Jeep back to the DEA's offices in Manhattan. *Id.* at 24:6-15. Det. Ocasio explained that, at the time, they believed the vehicles were involved in Defendant's drug trafficking activities and that they may contain evidence related to that activity. *Id.* at 24:11-15. Once at the DEA office, DEA policy governing seized vehicles required that inventory searches be conducted of the vehicles and any closed or locked containers located inside. *Id.* at 51:1-53:15; GX-7. During the inventory search of the White Audi, the agents seized and inventoried the black satchel and its contents, which included a wallet, six cellular phones, loose cellular phone SIM cards, loose papers and what appeared to be drug ledgers. Tr. 54:18-25. Pursuant to DEA policy, all the property in the White Audi and the Jeep identified during the inventory search was memorialized in either a DEA 6 or a DEA 12 form. *Id.* at 87:14-20. Specifically, Det. Ocasio testified that she searched the vehicles on March 28, 2016, and, on April 4, 2016, completed the DEA 6 forms, which describe the search of each vehicle. *See*, Tr. 87:14-20. On April 6, 2016, Det. Oscasio completed the DEA

4

12 forms, inventorying the items in each vehicle. *Id.*

III.  **Conclusions of Law**

   A.  **The Motion to Suppress Evidence**

On May 14, 2018, Defendant filed a motion to suppress evidence seized from the Jeep and Audi vehicles. *See*, Defendant's Motion to Suppress ("Def.'s Mot."), Dkt. Entry No. 97. On June 4, 2018, the Government filed its opposition to the motion. *See*, Government's Opposition ("Gov't Opp."), Dkt. Entry No. 99. Defendant filed a reply, accompanied by two affidavits. *See*, Defendant's Reply ("Reply"), Dkt. Entry No. 101; *See also*, Affidavits of Laura Perez and Nelson Fabian, Dkt. Entry No. 103. On August 2, 2018, the Court heard oral argument on the motion. At the oral argument, the Court explained that the affidavits provided in support of Defendant's reply were deficient because they were not notarized properly. *See generally*, Transcript ("O/A") of Aug. 2, 2018 Oral Arg., Dkt. Entry No. 109. The Court granted Defendant leave to file new affidavits and a supplemental memorandum of law. *See*, *Id.* at 55:1-20.

About three weeks later, Defendant filed a supplemental brief in support of his motion, accompanied by the affidavits of Defendant, Nelson Fabian, Defendant's brother and the purported owner of the White Audi, and Laura Perez, the purported owner of the Jeep. *See*, Defendant's Supplemental Memorandum ("Supp. Mem."), Dkt. Entry No. 105; Affidavit of Nelson Fabian, Dkt. Entry No. 106; Affidavit of Laura Perez, Dkt. Entry No. 107. The Government filed a supplemental opposition brief. *See*, Response in Opposition to Defendant's Supplemental Memorandum ("Supp. Opp."), Dkt. Entry No. 110.

The Court held a status conference on October 19, 2018 to address Defendant's motion, among other matters. *See*, Minutes of Status Conference ("Min. of S/C") held on Oct. 19, 2018, Dkt. Entry No. 131. The Court accepted the affidavits of Defendant and Nelson Fabian. *Id.* at

4:5-11. In his affidavit, Defendant claimed ownership of the black satchel. *See*, Dkt. Entry No. 105, Ex. 1. Nelson Fabian's affidavit stated that Defendant was authorized to use the White Audi and also was given "access to all interior compartments in the [vehicle], and to all bags and containers in the same manner as if he were the owner of the vehicle." *See*, Dkt. Entry No. 106. However, the Court still found one affidavit, that of Laura Perez, to be deficient. Min. of S/C at 4:13-22.

On December 3, 2018, Defendant, acting *pro se*, filed a newly executed affidavit from Laura Perez along with a request to relieve his attorney due to ineffective assistance and for the appointment of new counsel. *See*, Dkt. Entry No. 124. That same day, the Court held a conference to address the affidavit from Laura Perez and Defendant's motion to appoint new counsel. At the conference, the Court accepted the affidavit submitted by Defendant *pro se*, and appointed new counsel. Laura Perez declared in her affidavit that Defendant was authorized to use the Jeep as if he were the owner of the vehicle. *See*, Dkt Entry No. 124.

On February 27, 2019, the Court held a suppression hearing. The parties then submitted post-hearing briefs. Def's Post-Hr'g. Br., Dkt. Entry No. 142; Govt's Post-Hr'g. Br., Dkt. Entry No. 143; Def's Post-Hr'g. Reply, Dkt. Entry No. 145. Defendant argues that the physical evidence should be suppressed because the agents lacked probable cause to believe that any evidence related to the drug conspiracy would be in the White Audi or the Jeep. Def's Post-Hr'g. Br. at 9-11. Defendant also contends that the inventory search was improper because it was conducted solely for investigatory purposes and that the agents had no cause to impound the Jeep as it was legally parked on the street. *Id.* at 11-14. In opposition, the Government argues that: (1) Defendant lacks standing to challenge the searches; (2) agents had probable cause to search the vehicles; and (3) the evidence seized from both vehicles inevitably would have been discovered during the valid

inventory search of the vehicles. Govt's Post-Hr'g. Br. at 9-15.

B. **Defendant Had a Reasonable Expectation of Privacy in the Vehicles Searched**

As a preliminary matter, the Court concludes that Defendant possessed a reasonable expectation of privacy in the White Audi, as well as the Jeep and the satchel contained therein. As such, Defendant has standing to challenge the searches of those items. "It has long been the rule that a defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that *his* Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Padilla*, 508 U.S. 77, 81 (1993) (citing *Alderman v. United States*, 394 U.S. 165, 171-72 (1969) (additional citations omitted) (emphasis in original)). When considering a claimed violation of Fourth Amendment rights, the burden is on the defendant to establish that his own rights under the Fourth Amendment were violated. *United States v. Paulino*, 850 F.2d 93, 96 (2d Cir. 1988). A defendant's mere presence in an automobile is insufficient to establish a Fourth Amendment right to challenge its search. *Id.* at 97. "It is not the law, however, that only the owner of a vehicle may have a Fourth Amendment privacy interest therein that is protected against governmental invasion. Rather, the borrower of an automobile can possess such an interest." *United States v. Pena*, 961 F.2d 333, 337 (2d Cir. 1992).

Determining whether a defendant has a reasonable expectation of privacy in the area searched requires a two-step inquiry:

> A defendant seeking to suppress the fruits of a search by reason of a violation of the Fourth Amendment must show that he had a "legitimate expectation of privacy" in the place searched. . . . This inquiry involves two distinct questions: first, whether the individual had a subjective expectation of privacy; and second, whether that expectation of privacy is one that society accepts as reasonable.

*United States v. Hamilton*, 538 F.3d 162, 167 (2d Cir. 2008) (internal citations omitted).

Here, Defendant satisfies both steps of the inquiry. Regarding the subjective prong, the affidavits submitted by Defendant establish that he had a possessory interest in the White Audi,

7

the Jeep, and the black satchel. *See*, *United States v. Ulbricht*, 2014 WL 5090039, at *6 (S.D.N.Y. Oct. 10, 2014) (finding that a defendant's expectation of privacy must "be established by a declaration or other affirmative statement of the person seeking to vindicate his or her personal Fourth Amendment interest in the thing or place searched."). Thus, Defendant established a subjective expectation of privacy over both vehicles and the black satchel. As for the objective prong, Defendant's submissions establish that he had permission from the owners of the White Audi and the Jeep to "access to all interior compartments in the [vehicle]," and to all bags and containers just as if he were the owner. As a result, Defendant established a reasonable expectation of privacy as accepted by society in the White Audi and the Jeep and their contents. *See*, *United States v. Bethea*, 2015 WL 9462101, at *3 (E.D.N.Y. Dec. 23, 2015) (stating that a "defendant must show, among other things, a legitimate basis for being in [the vehicle], such as permission from the owner."). Accordingly, Defendant has standing to challenge the search.

### C. The Agents Had Probable Cause to Search the White Audi and Jeep

The Court next concludes that the agents had probable cause to believe that evidence of Defendant's alleged drug trafficking operation would be found in the White Audi or the Jeep. Probable cause for a search exists "when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Grubbs*, 547 U.S. 90, 95, (2006) (internal citation and quotation omitted). "[P]robable cause is a flexible, common-sense standard . . . [and] the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (citation and internal quotation marks omitted). To that end, the Supreme Court repeatedly has held that the touchstone of the Fourth Amendment is reasonableness, which,

in turn, is measured in objective terms by examining the totality of the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 39 (1996).

Generally, the police must obtain a warrant before conducting a search. *California v. Carney*, 471 U.S. 386, 390-91 (1985). Over nine decades ago, however, the Supreme Court recognized an exception to this requirement for searches of automobiles. *See*, *Carroll v. United States*, 267 U.S. 132, 153 (1925). Under that exception, law enforcement officers may search "a readily mobile vehicle where there is probable cause to believe that the vehicle contains contraband." *United States v. Babilonia*, 854 F.3d 163, 178 (2d Cir. 2017) (internal quotation omitted). The automobile exception applies even after a vehicle's occupant has been secured away from a vehicle and the vehicle has been transported away from the scene of arrest by law enforcement. *See*, *United States v. Navas*, 597 F.3d 492, 499 (2d Cir. 2010). Where law enforcement agents have probable cause to believe that a readily mobile vehicle "contains contraband, 'they may conduct a warrantless search of every part of the vehicle and its contents, including all containers and packages in the vehicle.'" *United States v. Gagnon*, 373 F.3d 230, 235 (2d Cir. 2004) (quoting *United States v. Cruz*, 834 F.2d 47, 51 (2d Cir. 1987)).

Here, the totality of circumstances establishes that there was probable cause to believe that the White Audi and the Jeep might contain evidence of Defendant's alleged drug trafficking operation. Before Defendant's arrest, Det. Ocasio had learned from two cooperating, reliable co-conspirators, Nunez and Suriel, that Defendant actively was responsible for supplying cocaine and heroin to drug traffickers and utilized various vehicles in doing so. Tr. 36:20-23, 38:7-8, 42:8-17, 49:12-16. Det. Ocasio determined through her investigation that, in addition to the Blue Audi, Defendant also sometimes operated the White Audi. *Id.* at 49:23-50:5. The agents also had searched unsuccessfully for the Blue Audi in the eleven days between the date the search warrant

9

was issued and Defendant's arrest, suggesting the potential use of different vehicles consistent the information already obtained from the co-conspirators. *Id.* at 48:1-19. Moreover, when stopped by the agents, Defendant supplied contradictory and evasive answers regarding his ownership of the Jeep. *See*, *Id.* at 23:7-17. Under these circumstances, the agents had probable cause to believe the Jeep and the White Audi likely contained evidence of Defendant's drug trafficking crimes. Accordingly, the agents lawfully were permitted to search both vehicles.

### D. The Evidence is Admissible as the Product of an Inventory Search and Due to Its Inevitable Discovery

Alternatively, assuming, *arguendo*, that the agents lacked probable cause to search the White Audi and the Jeep, the evidence seized from both vehicles inevitably would have been discovered during the valid inventory search of the vehicles. Under the doctrine of inevitable discovery, evidence obtained as a result of an unconstitutional search need not be suppressed if the Government can "prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police." *Nix v. Williams*, 467 U.S. 431, 447 (1984). The Government bears the burden of establishing inevitable discovery by a preponderance of the evidence. *Id.* at 444.

Here, the Government maintains that the agents lawfully seized the vehicles pursuant to Defendant's arrest, and, once the vehicles were seized, the agents were required to conduct an inventory search thereof pursuant to DEA administrative procedures. As such, the evidence would have been recovered pursuant to those searches. For this argument to succeed, the Court must be able to conclude that, "even if the invalid search had not been conducted, the evidence would nonetheless have been discovered in the course of a valid inventory search conducted pursuant to standardized, established procedures." *United States v. Mendez*, 315 F.3d 132, 138 (2d Cir. 2002).

Under the circumstances presented here, the Court finds that the Government has established inevitable discovery by a preponderance of the evidence.

Law enforcement officers may exercise discretion in the way they conduct an inventory search; the question is whether the policy governing the procedure for the search will "safeguard the interests protected by the Fourth Amendment." *United States v. Lopez*, 547 F.3d 364, 372 (2d Cir. 2008). In order to prevail, the Government must prove three elements: "(1) that the police had legitimate custody of the vehicle or other property being searched, so that an inventory search would have been justified," "(2) that when the police in the police agency in question conducted inventory searches, they did so pursuant to established or standardized procedures," and "(3) that those inventory procedures would have inevitably led to the discovery of the challenged evidence." *Id.* (internal quotation marks and citations omitted).

As to the custody requirement, a car lawfully may come into police custody "[w]hen a person is arrested in a place other than his home." *United States v. Morillo*, 2009 WL 3254431, at *9 (E.D.N.Y. Oct. 9, 2009) (quoting *United States v. Perea*, 986 F.2d 633, 643 (2d Cir. 1993)). Indeed, after a "valid arrest, the police [are] permitted to impound the vehicle and conduct an inventory search pursuant to standard procedures." *United States v. Scott*, 223 F. App'x 80, 82 (2d Cir. 2007). Exercising this "community caretaking" function, police may impound vehicles that are parked legally, particularly where, as here, a vehicle "will be inaccessible to its owner for an extended period—as a result of an arrest, for example" and at risk of theft, vandalism or other harm, so long as that step is "reasonable under the circumstances." *United States v. Barrios*, 2007 WL 3256945 (S.D.N.Y. Nov. 1, 2007), *aff'd*, 374 F. App'x 56 (2d Cir. 2010). Once Defendant was arrested, both the Audi that he had been driving and the Jeep that he claimed, and Ms. Perez declared, Defendant had full access to and use of, were lawfully seized by the agents in their

"community caretaking" function. Defendant claimed in his affidavit, that he was concerned the Jeep might get ticketed or towed because it did not have proper license plates and he was at the scene to attach the proper plates. The agents' seizure of the car was reasonable under the circumstances.

The Second Circuit has held that "[a]n inventory search pursuant to standardized procedures will be upheld unless there is a showing that the government acted in bad faith or searched the car for the sole purpose of investigation." *United States v. Arango-Correa*, 851 F.2d 54, 59 (2d Cir. 1988). On its own, a law enforcement officer's mere expectation of finding evidence will not invalidate an inventory search. *See*, *Lopez*, 547 F.3d at 372 ("[T]he Supreme Court has not required an absence of expectation of finding criminal evidence as a prerequisite to a lawful inventory search."). The reasonableness of an inventory search is determined by whether the officials conducting the search, "act[ed] in good faith pursuant to standardized criteria . . . or established routine." *Id.*

Contrary to Defendant's arguments, the seizure of both vehicles was lawful given Defendant's arrest on the street and the need to secure both vehicles, which, while not registered to Defendant, he had full use of and access to. As to the White Audi, Defendant had been driving the vehicle before double parking it illegally next to the Jeep, a fact that, by itself, would justify the vehicle's removal to "ensure the safety of [that vehicle] or to remove nuisances from the area." *See*, *Morillo*, 2009 WL 3254431, at *9 (citations omitted). As for the Jeep, whether or not it was parked legally is irrelevant as the community caretaking function still applies. As noted above, the Jeep did not have proper plates, which Defendant was concerned about replacing lest the car be towed or ticketed. It was appropriate to impound both vehicles following Defendant's arrest and not leave them on the street for an indefinite period, as a reasonable exercise of law

enforcement's "community caretaking" responsibilities.  *See*, *United States v. Mundy*, 806 F. Supp. 373, 376 (E.D.N.Y. 1992) (finding police's caretaking responsibilities "particularly important where a car would be unattended, even if legally parked, and the police have reason to believe that a suspect will be separated from his vehicle for a long period of time").

Defendant also contends that the inventory search is invalid because it was "purely investigatory" in nature and the agents failed to document properly the seized items in line with DEA policy. Both arguments lack merit. First, as noted above, the expectation of finding evidence by the officers is insufficient, by itself, to invalidate an inventory search. *See*, *Lopez*, 547 F.3d at 372 ("[T]he Supreme Court has not required an absence of expectation of finding criminal evidence as a prerequisite to a lawful inventory search."). Second, Det. Ocasio's alleged departure from inventory procedures, without more, does not render the search unconstitutional. *Id.* at 371 (rejecting the argument that "the failure to itemize each object found" during an inventory search was "incompatible with the Supreme Court's warning that inventory searches should be designed to produce an inventory" (internal quotation marks omitted)). Instead, the evidence establishes that Det. Ocasio conducted the inventory searches "in good faith pursuant to standardized criteria . . . or established routine," and she prepared the appropriate forms to document them as required. *Id.* Consequently, the inevitable discovery of the evidence during the valid inventory search provides another constitutional avenue for the Government's warrantless search of the two vehicles. Accordingly, Defendant's motion to suppress is denied in its entirety.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to suppress evidence seized from the two vehicles is denied in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
August 6, 2019

/s/
DORA L. IRIZARRY
Chief Judge